UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL DORSETT, *as Executor*
*De Son Tort, for Rudolph Dorsett*,

     Plaintiff,

v.                                             Case No. 8:21-cv-0910-KKM-AEP

HIGHLANDS LAKE CENTER, LLC
d/b/a HIGHLANDS LAKE REHABILITATION
AND HEALTHCARE CENTER and EVERTON
SPENCER, SR.,

     Defendants.

_____/

## ORDER

The role of a federal judge—even in a pandemic—is to interpret and apply the law to the particular facts of a case. Defendants Highlands Lake Center, LLC, and Everton Spencer ask this Court to circumvent the jurisdictional prescriptions that Congress, in 28 U.S.C. § 1331, instituted in order to retain jurisdiction over this case. But neither precedent nor the text of the statute at issue gives this Court jurisdiction through the doctrine of complete preemption. And the Court will not aggrandize the scope of a federal statute to manufacture jurisdiction over non-diverse, state-law claims. Accordingly, the

1

Court grants Plaintiff Michael Dorsett's motion to remand[1] (Doc. 6) over the opposition

of Defendants[2] (Docs. 9, 15) because Dorsett's complaint does not raise a federal question

and the Public Readiness and Emergency Preparedness Act (PREP Act) does not

completely preempt Dorsett's state-law claims. The Court therefore lacks subject-matter

jurisdiction and remands this case to state court.

## I.   BACKGROUND

On March 2, 2021, Dorsett filed a complaint in the Circuit Court of the Tenth

Judicial Circuit in and for Polk County, Florida, alleging two counts of negligence based

on the deprivation of nursing home residents' rights under Florida law and seeking damages

for wrongful death and for Dorsett's survivors. (Doc. 1-3.) The complaint alleges that

Rudolph Dorsett resided at Highlands Lake Center, LLC—a nursing home in Lakeland,

Florida—and that Highlands Lake Center, LLC, and Spencer acted negligently in their

provision of care and treatment of Rudolph Dorsett during the COVID-19 pandemic. (*Id.*

at 2–3, 9–11.) The complaint alleges that this negligence, including the failure to institute

---

[1] Michael Dorsett is the surviving child of Rudolph Dorsett and brings this action *as executor de son tort* for Rudolph Dorsett. (*See* Doc. 6 at 2.)

[2] Spencer filed a response in opposition on May 5, 2021. (Doc. 9.) On June 25, 2021, Defendants Spencer and Highlands Lake Center, LLC, filed an untimely amended response in opposition. (Doc. 15.) *See* Local Rule 3.01(c). Because the two responses share the same substance and the only daylight between them is the addition of Highlands Lake Center, LLC, as an opposing defendant, the Court refers only to Spencer's response for convenience. (*Compare* Doc. 9 *with* Doc. 15.) Moreover, Defendants' responses in opposition to the motion to remand (Docs. 9, 15) fail to comply with the District's formatting rules and the Court possesses the power to strike them on that basis. *See* Local Rules 1.08(b) & 3.01(b). Nonetheless, the Court has considered their arguments in opposition and finds them unpersuasive.

adequate COVID-19 protocols and provide proper COVID-19 training and equipment, caused Rudolph Dorsett's physical and emotional injuries and ultimately his death. (*Id.* at 2–5.)

Defendants timely filed a notice of removal on April 16, 2021, alleging that "[t]his case is removable . . . on the basis of 'original jurisdiction' because [Dorsett's] Complaint asserts a claim 'arising under' federal law within the meaning of [28 U.S.C.] § 1331." (Doc. 1 at 3.) Specifically, Defendants argue that the allegations in Dorsett's complaint present a federal question arising under the PREP Act and that "Congress has clearly manifested the intent to preempt state law with respect to claims that invoke the PREP Act immunity and to create an exclusive federal remedy for such preempted claims." (*Id.* at 6.) On April 22, 2021, Dorsett moved to remand the action to state court, arguing that "the PREP Act's provisions regarding the administration or use of covered countermeasures[3] are not applicable to the allegations in this case, which allege negligence stemming from a *failure* to follow certain policies, procedures, and guidelines regarding COVID-19," and that the Court should remand this case to state court because it "lacks subject-matter jurisdiction." (Doc. 6 at 2.) In its response in opposition to the motion to remand, Spencer argues that

---

[3] Countermeasures for COVID-19 include, for example, the various emergency authorized vaccines. *See* Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79,190 at 79,196 (Dec. 9, 2020).

even though Dorsett does not plead a federal cause of action in his complaint, the PREP Act completely preempts Dorsett's state-law claims and "supplies federal subject matter jurisdiction such that Defendant's removal was proper." (Doc. 9 at 2, 6–7.)

## II.    COMPLETE PREEMPTION AND THE PREP ACT

### a.  Federal Question Jurisdiction and Complete Preemption

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Federal courts are courts of limited jurisdiction, and the removal statute must be construed narrowly, resolving any doubts against removability. When, as here, a defendant asserts jurisdiction in a notice of removal, the defendant has the burden of establishing that removal is proper. "Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1331, a defendant may assert federal question jurisdiction where a civil action arises under the Constitution, laws, or treaties of the United States.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392; *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (explaining that under the "longstanding interpretation of the current statutory scheme,

4

the question of whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint'"). The well-pleaded complaint rule means that a federal question is "presented" when the complaint—on its face—invokes federal law as the basis for relief. "Th[is] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392. The Supreme Court long ago declared that, "[b]y unimpeachable authority," a lawsuit "brought upon a state statute does not arise under an act of Congress or the Constitution of the United States." *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 116 (1936).

So too, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharm. Inc.*, 478 U.S. at 808. Indeed, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393. This type of defensive preemption, sometimes called "ordinary preemption," is subject to the well-pleaded complaint rule. *See Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352–53 (11th Cir. 2003). Ordinary preemption provides an affirmative defense to state-law claims but will not provide a basis for removal to federal court. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343–44 (11th Cir. 2009).

5

"One corollary of the well-pleaded complaint rule," however, is the doctrine of complete preemption. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Distinct from ordinary preemption—which is an affirmative defense that may be invoked in both state and federal court—complete preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Geddes*, 321 F.3d at 1352 ("The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called 'ordinary preemption,' providing a substantive defense to a state law action on the basis of federal law."); *see also Conn. State Dental Ass'n*, 591 F.3d at 1343–44 (explaining that "[c]omplete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule" and "differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense").

Complete preemption is rare. So rare, in fact, that the Supreme Court has found it only three times in federal statutes. It arises when the preemptive "force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule," and any claim purportedly based on that preempted state law is considered a federal claim from inception and therefore arises under federal law.[4] *Caterpillar Inc.*, 482 U.S. at 393 (quotation

---

[4] There are not insubstantial reasons to doubt the jurisprudential origins of the "complete preemption"

6

omitted); *see Metro. Life Ins. Co.*, 481 U.S. at 63–64 ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."). Complete preemption "transforms the state claim into one arising under federal law, thus creating the federal question jurisdiction requisite to removal to federal courts." *Geddes*, 321 F.3d at 1353; *see Conn. State Dental Ass'n*, 591 F.3d at 1343 ("Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim.").

The "touchstone" of the complete preemption analysis is "the intent of Congress" to make the state cause of action removable. *Metro. Life Ins. Co.*, 481 U.S. at 66. The Supreme Court has found this intent in two circumstances. The first arises when Congress expressly preempts state law and provides for removal. *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999) (finding that, through the "unusual preemption provision" of the Price-Anderson Act, Congress "expressed unmistakable preference" to permit removal).

The second form of complete preemption occurs when "a federal statute wholly

---

doctrine. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11–22 (2003) (Scalia, J., dissenting) (raising criticisms about the "flimsiness" of the doctrine's "precedential roots" and lack of a "theoretical foundation"). Whatever the merits of this "jurisprudential alchemy," *id.* at 14, this Court is bound to apply it as governing precedent.

displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Of course, it is not enough "that a defendant might ultimately prove that a plaintiff's claims are pre-empted." *Caterpillar Inc.*, 482 U.S. at 398. That is an ordinary preemption defense that does not create removal jurisdiction and must be raised in state court. *See id.*; *Geddes*, 321 F.3d at 1351 (noting that Congress must intend to confer "the ability to remove," not "only intend[] for a federal statute to provide a defense to state-law claims" (quotation omitted)). Instead, the state cause of action the plaintiff asserted must "come[] within the scope of the federal cause of action" to trigger complete preemption. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. of S. Cal.*, 463 U.S. 1, 24 (1983); *see Caterpillar Inc.*, 482 U.S. at 393. In the three instances that the Supreme Court concluded that complete preemption exists, the federal statues at issue provided an exclusive cause of action for the state-law claim asserted and set forth procedures and remedies governing that cause of action. *Beneficial Nat'l Bank*, 539 U.S. at 8.

In "the absence of explicit direction from Congress, the Supreme Court has indicated its reluctance to find the extraordinary preemptive power necessary for complete preemption." *Geddes*, 321 F.3d at 1353 (quotation omitted); *see Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 856 (11th Cir. 1999) (explaining that the Supreme Court approaches the complete preemption doctrine "hesitatingly," and "displays no enthusiasm to extend the doctrine"). This reluctance stems from the

8

"paramount policies embodied in the well-pleaded complaint rule," including respect for "the plaintiff as the master of the complaint," for state courts as the chosen forum, and for Congress's longstanding decision that "a federal question must appear on the face of the complaint" to trigger removal jurisdiction. *Caterpillar Inc.*, 482 U.S. at 398–99.

### b.  The PREP Act and Complete Preemption

Enacted December 30, 2005, the PREP Act authorizes the Secretary of Health and Human Services to "make[] a determination that a disease or other health condition or other threat to health constitutes a public emergency, or . . . future . . . emergency." 42 U.S.C. § 247d-6d(b)(1). If such a determination is made, the Secretary "may make a declaration . . . recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." § 247d-6d(b)(1). Once the Secretary issues a declaration, then a covered person, as defined by the statute, "shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." § 247d-6d(a)(1). The Secretary's issuance of a declaration also triggers the establishment of an emergency fund designated as the "Covered Countermeasure Process Fund" "for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a

covered countermeasure." § 247d-6e(a).

The PREP Act provides definitions for many, but not all, key terms. For example, it defines "covered countermeasure" as a qualified pandemic or epidemic product; security countermeasure; drug, biological product, or device; or respiratory protective device. § 247d-6d(i)(1). The term "covered person," "when used with respect to the administration or use of a covered countermeasure means" the United States or a person or entity that is (i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of a person or entity described. § 247d-6d(i)(2). But the statute does not define "administration to" or "use by" a covered person regarding the application of the countermeasure.

"Subject to subsection (f), the sole exception to the immunity from suit and liability of covered persons . . . [is] an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person." § 247d-6d(d)(1). Per the statute, any action initiated under this liability immunity exception must be "filed and maintained only in the United States District Court for the District of Columbia," § 247d-6d(e)(1), and only after certain administrative remedies are exhausted, § 247d-6e(d). And if the "Secretary determines that a covered individual qualifies for compensation" under the "Covered Countermeasure Process Fund,"

the individual "has an election to accept the compensation or to bring an action" under the exception provided in § 247d-6d(d). *See* § 247d-6e(d)(5). If the individual accepts the compensation, then the individual may not bring an action in federal court. § 247d-6e(d)(5).

Once the Secretary has made a determination "that a disease or other health condition or other threat to health constitutes a public health emergency, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency, the Secretary may make a declaration, through publication in the Federal Register, recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures . . . ." § 247d-6d(b)(1). "In deciding whether and under what circumstances or conditions to issue a declaration . . . , the Secretary shall consider the desirability of encouraging the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, and use of such countermeasure." § 247d-6d(b)(6).

In his declaration, the Secretary must identify the following for each specified covered countermeasure: the category of diseases, health conditions, or threats for which the Secretary recommends the administration or use of the countermeasure; the duration

of liability immunity for each covered countermeasure; the population, if any, of individuals to whom liability immunity applies with respect to the administration or use of the countermeasure; the geographic area(s) that the liability immunity covers with respect to the administration or use of the countermeasure; and whether liability immunity is effective for only a particular means of distribution for obtaining the countermeasure. § 247d-6d(b)(2). The Secretary is permitted to amend any portion of the declaration through publication in the Federal Register, although any amendment may not retroactively limit the applicability of immunity with respect to the administration or use of the covered countermeasure involved. § 247d-6d(b)(4).

In March 2020, the Secretary issued a declaration under the PREP Act regarding the COVID-19 pandemic. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020). The Secretary has since amended the declaration eight times. *See* First Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 21,012 (Apr. 15, 2020); Second Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35,100 (June 8, 2020); Third Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 52,136 (Aug. 24, 2020); Fourth Amendment to Declaration Under the PREP Act for Medical Countermeasures

Against COVID-19, 85 Fed. Reg. 79,190 (Dec. 9, 2020); Fifth Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 7,872 (Feb. 2, 2021); Sixth Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 9,516 (Feb. 16, 2021); Seventh Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14,462 (Mar. 16, 2021); Eighth Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 41,977 (Aug. 4, 2021).

## III.   ANALYSIS

Because the parties are not of diverse citizenship, the Court can only exercise jurisdiction if federal question jurisdiction exists. If it does not, the Court must grant Dorsett's motion to remand to state court. *See* 28 U.S.C. § 1447(c). As an initial matter, Dorsett's complaint neither asserts a federal claim nor references any federal statutes on its face. Dorsett alleges only state-law claims in his complaint. And Spencer does not appear to dispute that Dorsett's complaint fails to raise an issue of federal question under the well-pleaded complaint rule.

Instead, Spencer argues that the PREP Act completely preempts Dorsett's state-law claims, supplying an exception to the well-pleaded complaint rule. (Doc. 9 at 6–8.) As a result, the Court has subject-matter jurisdiction over this action only if the PREP Act

completely preempts Dorsett's claims and transforms his state common-law complaint into one arising under federal claw. *See Conn. State Dental Ass'n*, 591 F.3d at 1343 ("Because Plaintiffs' complaints allege only state law claims, there is no [federal question] jurisdiction under the well-pleaded complaint rule.").

### a.  Textual Argument for Complete Preemption under the PREP Act

In his motion for remand, Dorsett argues that his complaint "does not, on its face, assert a federal claim," and therefore fails to trigger federal question jurisdiction under the well-pleaded complaint rule. (Doc. 6 at 4–5.) Dorsett further contends that the doctrine of complete preemption does not apply under the PREP Act because his claims do not "fall within the scope of the relevant statute." (*Id.* at 8.) As such, Dorsett argues that because "the PREP Act is inapplicable," "it cannot be used to establish federal question jurisdiction under the doctrine of complete preemption and remand is appropriate." (*Id.* at 20.) Spencer responds that removal is proper because the PREP Act completely preempts Dorsett's state-law claims. (Doc. 9 at 2, 6.)

Most courts that have addressed this issue—including all of those that have addressed the issue in this District—have concluded that the PREP Act is not a complete preemption statute. *See, e.g., Smith ex rel. Smith v. Bristol at Tampa Rehab. & Nursing Ctr., LLC*, No. 8:20-CV-2798-T-60SPF, 2021 WL 100376 (M.D. Fla. Jan. 12, 2021) (Barber, J.); *Gunter v. CCRC OPCO-Freedom Square, LLC*, No. 8:20-CV-1546-T-

14

36TGW, 2020 WL 8461513 (M.D. Fla. Oct. 29, 2020) (Honeywell, J.); *Parr ex rel. Parr v. Palm Garden of Winter Haven, LLC*, No. 8:21-CV-764-SCB-SPF, 2021 WL 1851688 (M.D. Fla. May 10, 2021) (Bucklew, J.); *Evans v. Melbourne Terrace RCC, LLC*, No. 6:21-CV-381-JA-GJK, 2021 WL 1687173, at *2 (M.D. Fla. Apr. 29, 2021) (Antoon, J.). The undersigned agrees.

Absent an express provision allowing removal of state-law claims, complete preemption only arises if a federal statute creates an exclusive federal cause of action that "wholly displaces" the state-law claim the plaintiff asserted. *Beneficial Nat'l Bank*, 539 U.S. at 8. To avoid remand to state court, Spencer must show that the PREP Act is so extraordinarily preemptive that it gives rise to the rare phenomenon of complete preemption *and* that the state-law claims Dorsett asserted are within the scope of an exclusive federal cause of action. *See Metro Life Ins. Co.*, 481 U.S. at 65–66. Spencer can do neither.

Spencer's argument relies on the PREP Act's preemption provision that bars any State from "establish[ing], enforc[ing], or continu[ing] in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . is different from, or is in conflict with, any requirement applicable under this section; and . . . relates to the . . . use, . . . dispensing, or administration by qualified persons of the covered countermeasure."

15

42 U.S.C. § 247d-6d(b)(8).[5]  He argues that this provision "triggers complete preemption of [Dorsett's] claims and supplies federal subject matter jurisdiction such that Defendant's removal was proper." (Doc. 9 at 2.)

But Spencer misinterprets the PREP Act's preemption provision, confusing ordinary preemption that creates a defense and the extraordinary doctrine of complete preemption that creates removal jurisdiction. The "PREP Act is, at its core, an immunity statute; it does not create rights, duties, or obligations." *Dupervil v. All. Health Operations, LCC*, No. 20-CV-4042(PKC)(PK), 2021 WL 355137, at *9 (E.D. N.Y. Feb. 2, 2021); *see* 42 U.S.C. § 247d-6d(a)(1).  Rather than triggering complete preemption and thereby giving this Court federal question jurisdiction, the PREP Act merely preempts state laws

---

[5] The "Preemption of State Law" provision of the PREP Act reads as a whole:

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that--
>> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

42 U.S.C. § 247d-6d(b)(8).

16

that create different standards regarding the administration or use of covered countermeasures during the effective period of the Secretary's declaration. § 247d-6d(b)(8). This is a textbook example of ordinary defensive preemption.

Further, rather than being of "extraordinary pre-emptive power," *Metro Life Ins. Co.*, 481 U.S. at 65, the PREP Act's preemption provision is limited in several important respects. First, the language contemplates a temporary operative period (i.e., while the Secretary's declaration is in effect). Second, it places significant remedial power in the Secretary.[6] Third, with one limited exception, it fails to create a federal cause of action for these kinds of claims. Finally, it only addresses the State's ability to "establish, enforce, or continue in effect" a legal requirement concerning covered countermeasures. It does not address private causes of action arising under state law. These textual limits show the PREP Act does not give rise to the exceedingly rare doctrine of complete preemption, which requires a statute to have preemptive force *so extraordinary* that it converts an ordinary state common-law complaint into one stating a federal claim. *See Caterpillar, Inc.*, 482 U.S. at 393. The PREP Act simply does no such thing.

But even if the Court agreed that the PREP Act had "that extraordinary pre-

---

[6] When "providing immunity from suit to certain covered persons for certain types of claims, the PREP Act confers primary jurisdiction over most claims within its scope" to the Secretary, "who has the sole authority to administer and provide compensation from a 'Covered Countermeasure Process Fund,'" rather than the federal courts. *Dupervil*, 2021 WL 355137, at *9 (citing 42 U.S.C. §§ 247d-6e(a), 247d-6e(b)).

emptive power," Spencer must still show that the PREP Act's exclusive federal remedy entirely subsumes the state-law claims that Dorsett asserts. *Metro Life Ins. Co.*, 481 U.S. at 64–65 (observing that preemption of a substantive area of law "does not convert a state law claim into an action arising under federal law," unless the state claim "is within the scope of [the exclusive federal cause of action]"). That Spencer cannot do.

The PREP Act creates one exclusive federal cause of action. *See Dupervil*, 2021 WL 355137, at *9 (explaining that the PREP Act, "for the most part, . . . provides no causes of action at all"). It only applies to claims arising from "death or serious physical injury" caused by "willful misconduct." 42 U.S.C. §§ 247d-6d, 247d-6e(d). If that federal claim "displaces entirely" Dorsett's asserted state-law claims, Spencer might have an argument that those claims are in fact "creature[s] of federal law." *Franchise Tax Bd. of Cal.*, 463 U.S. at 23–24. But it does not. Dorsett is suing for survival and wrongful death damages arising from negligence under section 400.023, Florida Statutes. The PREP Act defines "willful misconduct"—the only conduct covered under the PREP Act's exclusively federal claim—as "a standard for liability that is more stringent than a standard for negligence or any form of recklessness." 42 U.S.C. § 247d-6d(c)(1)(B). Dorsett's claim is, accordingly, outside the scope of the exclusive federal cause of action and does not arise under federal law through the complete preemption doctrine. *See Dupervil*, 2021 WL 355137, at *9 ("[T]o determine whether a federal statute completely preempts a state-law

18

claim within its ambit, we must ask whether the federal statute provides the exclusive cause of action for the asserted state-law claim." (quotation omitted)); *cf. Geddes*, 321 F.3d at 1354 (concluding that the doctrine of complete preemption did not extend to the Railway Labor Act (RLA) where the RLA included "no language granting general jurisdiction over minor disputes to federal courts" in "stark contrast" to the LMRA and ERISA, which "have express language creating a federal cause of action for the resolution of disputes").

Accordingly, the PREP Act does not create special removal jurisdiction sufficient to displace the well-pleaded complaint rule, which is "the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Metro. Life Ins. Co.*, 481 U.S. at 63. Instead, it is "an immunity statute." *Dupervil*, 2021 WL 355137, at *9. Tellingly, Spencer's arguments reflect this. Spencer says his "position is that its administration and allocation of countermeasures in this context is *immunized* from liability under" the PREP Act and admits that the "present issue is who decides that *immunity*, this Court or a state court." (Doc. 9 at 1–2 (emphasis added).) These arguments are fundamentally defensive in nature and resemble ordinary preemption. *See Franchise Tax Bd. of Cal.*, 463 U.S. at 13 ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. . . .") Thus, Spencer's contentions undermine his position.

### b. Deference Argument for Complete Preemption under the PREP Act

Spencer also argues that many of the federal court orders that have addressed this issue and remanded the claims to state court were decided prior to the Department of Health and Human Services General Counsel's Advisory Opinion dated January 8, 2021, and the Secretary's Fourth Amendment to the Declaration. (Doc. 9 at 8.); U.S. Dep't of Health & Hum. Servs., Gen. Counsel, Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision (Jan. 8, 2021) (hereinafter Advisory Op.). According to Spencer, the Advisory Opinion and Amendment explain the broad scope of the PREP Act as giving rise to complete preemption and, had they been issued at the time, would have altered the analysis of the previous federal court orders that cut against his position. (*Id.*)

According to Spencer, the Secretary's Fourth Amendment "makes explicit" that "the failure of a Covered Person to act can nonetheless implicate the PREP Act and trigger its immunity protections," defeating Dorsett's argument that the PREP Act is inapplicable because the allegations in its complaint involve Defendants' inaction. (*Id.* at 2.) The Secretary's Fourth Amendment explains that "there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act and this Declaration's liability protections." Fourth Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. at

79,194. Spencer points to this language to argue that "the failure of a Covered Person to act can nonetheless implicate the PREP Act and trigger its immunity protections," (Doc. 9 at 2 (emphasis omitted)), and rebut Dorsett's argument that "the PREP Act's provisions regarding the administration or use of covered countermeasures are not appliable to the allegations in this case, which allege negligence stemming from a *failure* to follow certain policies, procedures, and guidelines regarding COVID-19." (Doc. 6 at 2.)

But Spencer puts the cart before the horse. The Fourth Amendment's language and the argument about whether the PREP Act applies to inaction is inapposite to the complete preemption inquiry—the threshold issue relevant to whether Dorsett's complaint may properly be removed to federal court. Whether action or non-action falls within the scope of the PREP Act and triggers its immunity protection is a merits inquiry that the Court does not reach in the light of its conclusion that it lacks subject-matter jurisdiction.

In any event, to the extent that the Secretary's Fourth Amendment and General Counsel's Advisory Opinion are interpretations of the preemptive effect of the PREP Act, they are not binding on this Court. It is axiomatic that the Court holds the power to say what the law is. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Accordingly, it is the Court's job to interpret the statute and determine its preemptive scope, including whether the statute provides complete preemption. In doing so, this Court must "rely[] on the substance of state and federal law and not on agency proclamations of preemption."

21

*Wyeth v. Levine*, 555 U.S. 555, 576 (2009). And this Court "must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop." *Fed. Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (quotations omitted).

But Spencer argues the Court should defer to the General Counsel's interpretation of the PREP Act on whether complete preemption exists. (Doc. 9 at 13–14.) Of course, courts must defer to agency interpretations of ambiguous statutes. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But that doctrine does not apply here.

The General Counsel's interpretation is not entitled to *Chevron* deference because it does not purport to exercise the force of law. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 586 (2000) (explaining that "an interpretation contained in an opinion letter," as opposed to the result of "a formal adjudication or notice-and-comment rulemaking," does "not warrant *Chevron*-style deference" because it "lack[s] the force of law"). The Advisory Opinion disavows having any "force or effect of law." Advisory Op. at 5.

But even if *Chevron* deference was applicable, this Court *should not* defer unless the PREP Act's preemption provisions were ambiguous and the Advisory Opinion's interpretation was a reasonable construction of that textual ambiguity. *See Christensen*, 529 U.S. at 586–87 ("In *Chevron*, we held that a court must give effect to an agency's

22

regulation containing a reasonable interpretation of an ambiguous statute."). But the PREP Act lacks no ambiguity on its preemptive effect, and therefore the Court need not reach the reasonableness inquiry of the Advisory Opinion's construction.

As explained above, the PREP Act is clear. It does not create complete preemption and Dorsett's claims are not within the scope of the PREP Act's exclusive federal cause of action. The statute is not ambiguous. So, *Chevron* deference is inapplicable. As the Supreme Court recently explained, "deference is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (quoting *Chevron*, 467 U.S. at 843 n.9).

But if a statute was ambiguous as to complete preemption, the presumption against preemption would override any agency interpretation to the contrary. *See Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 681 n.4 (2003) (Thomas, J., concurring in judgment) ("If a federal statute is ambiguous with respect to whether it pre-empts state law, then the presumption against pre-emption should ordinarily prevent a court from concluding that the state law is pre-empted."). In the context of ordinary conflict preemption, the Supreme Court explained that the presumption against preemption exists "because respect for the States as 'independent sovereigns in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt state law causes of action.'" *Wyeth*, 555 U.S. at 566 n.3 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). And how much more would

this presumption foreclose any reliance on agency interpretations when the argument is for complete preemption, a doctrine that the Supreme Court has applied in only three instances throughout history?

Thus, the Advisory Opinion's view of the PREP Act carries only the weight of its "power to persuade." *U.S. v. Mead Corp.*, 533 U.S. 218, 235 (2001); *Christensen*, 529 U.S. 587 (explaining that "interpretations contained in formats such as opinion letters are 'entitled to respect,' but only to the extent that those interpretations have the 'power to persuade'" (citations omitted)). The Court is not persuaded based on its own reading of the plain text, as explained above.

And there is an independent reason that the Secretary's and General Counsel's interpretations are not binding: Congress did not—and could not—delegate authority to conclusively determine the scope of the PREP Act's preemption, complete or ordinary. *See Wyeth*, 555 U.S. at 576, 580 (explaining the judicial role in determining preemption as "independent" from agency conclusions, even those issued in binding form).

By its language, the PREP Act grants the Secretary the authority only to determine when "a disease or other health condition or other threat to health constitutes a public emergency" and to "make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." 42 U.S.C. § 247d-6d(b)(1). He may also

24

provide compensation to eligible individuals under the Covered Countermeasure Process Fund, § 247d-6e(b)(1). His powers end there—Congress did not delegate authority to conclusively interpret the preemptive scope of the PREP Act.

Nor could it. Courts do "not defer[] to an agency's *conclusion* that state law is preempted." *Wyeth,* 555 U.S. at 576; *cf. Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1338 (11th Cir. 2015) ("[W]hile some weight can be given to an agency's views on a state law's impact on a federal regulatory scheme, deference to an agency's ultimate conclusion of federal preemption is inappropriate."). Instead, this Court "perform[s] its own [preemption] determination, relying on the substance of state and federal law and not on agency proclamations of pre-emption." *Wyeth*, 555 U.S. at 576. As with the *Chevron* analysis above, the "weight we accord the agency's explanation" depends on its thoroughness, consistency and persuasiveness." *Id.* at 577; *see Mead*, 533 U.S. at 234–35; *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The Advisory Opinion is not persuasive.

The Department of Health and Human Services General Counsel's Advisory Opinion includes sweeping assertions about what the PREP Act does. Without citation, it states that the PREP Act "completely preempts" state claims because it establishes both "a federal cause of action, administratively or judicial, as the only viable claim" and "vests exclusive jurisdiction in a federal court." Advisory Op. at 2. It also explains that the "plain

language of the PREP Act" extends immunity "to anything 'relating to' the administration

of a covered countermeasure." *Id.* at 3. The examples that the Advisory Opinion then

provides as qualifying for this immunity consist of *non-use* of countermeasures, as long as

done through a "decision-making process." *Id.* Finally, the Advisory Opinion suggests that

the *Grable* doctrine[7] applies and that a federal court could "retain" a removed case "to

decide whether the immunity and preemption provisions apply" and if they do not, "try the

case as it would a diversity case."[8]  *Id.* at 5. Alternatively, the Advisory Opinion suggests

that a federal court could find that the PREP Act applies and dismiss the case based on

---

[7]  A circumscribed doctrine that allows a federal court, in certain cases, to hear a state-law claim even if not arising under federal law because the claim "implicate[s] significant federal issues" and thereby federal-question jurisdiction "will lie." *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (finding federal question jurisdiction over a state quiet title action removed to federal court when the underlying claim turned on the adequacy of the IRS's notice to plaintiff about a tax delinquency before selling the disputed property).

[8]  Spencer also argues that the Fourth Amendment's reference to *Grable* is evidence of "HHS's intention that cases implicated by the PREP Act must be adjudicated by federal courts" and that this Court should defer to the Department's construction of the statute under *Chevron*. (Doc. 9 at 13.) The Fourth Amendment declares that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable* . . . in having a uniform interpretation of the PREP Act." Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. at 79,194. But the Fourth Amendment misconstrues *Grable*. *See Dupervil*, 2021 WL 355137, at *14. Under *Grable*, the question is whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 313. Mere "substantial federal legal and policy interests," Advisory Op. at 5, are insufficient where none of the claims in Dorsett's complaint "necessarily raise a stated federal issue." *See Grable*, 545 U.S. at 314. The PREP Act, a statute affording immunity, which is a defense, is neither an essential element to any of Dorsett's claims nor causes Dorsett to raise a stated federal issue in his complaint. *See Dupervil*, 2021 WL 355137, at *14.

lack of jurisdiction or transfer to the District Court for the District of Columbia.[9]  *Id.*

If the PREP Act authorizes this kind of revolutionary jurisdiction to federal courts over non-diverse, state-law claims, Congress delegated not only an enormous amount of legislative power to the Secretary when issuing a declaration to decide what constitutes an immunized "countermeasure," but also empowered the Secretary to unilaterally expand § 1331 jurisdiction in federal courts to include otherwise ordinary state-law claims. This Court would "hesitate before concluding that Congress has intended such an implicit delegation" of power over the jurisdiction of federal courts and the prerogative of States to enforce claims in their own courts. *Brown & Williamson Tobacco Corp.*, 529 U.S. at 158.

The Advisory Opinion says surprisingly little on complete preemption. It lists the Supreme Court's main complete preemption cases but provides no analysis of those cases— or any other source—before reaching its conclusion that the PREP Act completely preempts state-law claims. Advisory Op. at 2. Perhaps for this reason the Advisory Opinion misstates the law, ignoring the fact that the Supreme Court has always required either express statutory text permitting removal or that the state-law claim come within the scope of the exclusive federal cause of action created in the statute. *See Beneficial Nat'l Bank*, 539 U.S. at 8 (identifying the "only two circumstances" permitting removal of a state-law

---

[9] The Advisory Opinion makes no mention of the analysis required by the text of the PREP Act as it relates to the exhaustion requirement before a federal cause of action accrues in the District Court for the District of Columbia. *See* 42 U.S.C. § 247-6e(d).

claim as "when Congress expressly so provides" and "when a federal statute wholly displaces the state-law [claim]" such that "it comes within the scope of [the federal] cause of action"). After this opening, the Advisory Opinion shifts to clarifying whether non-use of a covered countermeasure falls within the terms of the PREP Act. Advisory Op. 2–4. As discussed above, this inquiry is a merits question that may point to a federal immunity, but it does nothing to show that the PREP Act has "unique pre-emptive force" or that "Congress . . . clearly manifested an intent to make causes of action within the scope of the [exclusive federal cause of action] removable to federal court." *Metro. Life Ins. Co.*, 481 U.S. at 65–66.

And so, the Advisory Opinion does not provide persuasive evidence of Congress's intent to "so completely pre-empt" this area of law that it provides for removal jurisdiction despite the well-pleaded complaint rule, which "is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Id.* at 63 ("[T]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress . . . ."). The most that can be said for the Advisory Opinion's arguments is that—if true—they would provide "a complete federal defense" to the state-law claims Dorsett asserts. *Beneficial Nat'l Bank*, 539 U.S. at 9. "Such a federal defense, however, would not justify removal." *Id.*

## IV.   CONCLUSION

Considering that the PREP Act is fundamentally an immunity statute that does not permit claims to be brought in federal court (except for one narrow exception), the Court concludes that the PREP Act does not completely preempt Dorsett's state-law claims, which do not inherently implicate substantial and disputed federal claims. Without complete preemption or the application of *Grable*, no basis for removal exists. Spencer's arguments are better suited for an ordinary preemption argument in state court—which can operate defensively but is subject to the well-pleaded complaint rule and does not permit removal. *Blab T.V. of Mobile*, 182 F.3d at 854–55. Accordingly, because Dorsett's complaint does not raise any question arising under federal law such that it overtakes the well-pleaded complaint rule, federal question jurisdiction is not implicated. In the absence of subject-matter jurisdiction, it is **ORDERED**:

(1) Plaintiff Michael Dorsett's motion to remand (Doc. 6) is **GRANTED**.

(2) The Clerk is **DIRECTED** to remand this action to the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, and to terminate all pending motions and deadlines and to close the case.

**ORDERED** in Tampa, Florida, on August 31, 2021.

Kathryn Kimball Mizelle
United States District Judge